Case No. 10-4339

---

# In the
# United States Court of Appeals
# for the Sixth Circuit

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

vs.

SHAWN MICHAEL LENNARD,

Defendant-Appellant.

## BRIEF OF APPELLEE

---

On Appeal from the United States District Court
Northern District of Ohio, Western Division

---

STEVEN M. DETTELBACH
UNITED STATES ATTORNEY
Northern District of Ohio

By: Thomas O. Secor
Assistant U.S. Attorney
Four Seagate, Suite 308
Toledo, Ohio 43604-2624
Telephone: (419) 259-6376
Facsimile: (419) 259-6360
Reg. No. 0019852
Attorney for the United States of America

TABLE OF CONTENTS

Page

TABLE OF CONTENTS.. . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . ii

STATEMENT REGARDING ORAL ARGUMENT.. . . . . . . . . . . . . 1

JURISDICTIONAL STATEMENT. . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUES.. . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE.. . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE FACTS. . . . . . . . . . . . . . . . . . . 9

SUMMARY OF ARGUMENT.. . . . . . . . . . . . . . . . . . . . 13

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . 15

I.   STANDARDS OF REVIEW. . . . . . . . . . . . . . . . . . 15

     A.   Motions to Suppress.. . . . . . . . . . . . . . . 15

     B.   Constitutionality of the Sentence.. . . . . . . . 15

II.  THE DISTRICT COURT PROPERLY DENIED LENNARD'S MOTION TO
     SUPPRESS THE SEARCH WARRANT. . . . . . . . . . . . . . 17

III. THE DISTRICT COURT PROPERLY DENIED LENNARD'S MOTION TO
     SUPPRESS HIS STATEMENTS TO LAW ENFORCEMENT OFFICERS. . . 25

IV.  APPLICATION OF SENTENCING ENHANCEMENTS DID NOT VIOLATE
     LENNARD'S SIXTH AMENDMENT RIGHT TO TRIAL BY JURY.. . . . 34

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . 37

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . 38

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . 38

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS. . . . . . 39

TABLE OF AUTHORITIES

CASES                                                          Page

Abela v. Martin, 380 F.3d 915 (6th Cir. 2004). . . . . . . . .  26

Andersen v. Thieret, 903 F.2d 526 (7th Cir.  1990).  . . . . .  29

Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348 (2000)..  37

Davis v. United States, 512 U.S. 452, 114  S.Ct. 2350 (1994).  26

Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880 (1981).. . .  26

Estelle v. Smith, 451 U.S. 454, 101 S.Ct. 1866 (1981).. . . .  25

Gall v. United States, 552 U.S. 38, 128 S.Ct. 586  (2007).. .  16

Illinois v. Gates, 462 U.S. 238, 103 S. Ct. 2332 (1983)..  17, 18

Johnson v. United States, 520 U.S. 461 (1997).. . . . . . . .  16

Ledbetter v. Edwards, 35 F.3d 1062 (6th Cir. 1994).  . . .  27, 32

McCall v. Dutton, 863 F.2d 454 (6th Cir. 1988).  . . . . . . .  31

Minnick v. Mississippi, 498 U.S. 146, 111 S.Ct. 486 (1990). .  26

Miranda v. Arizona, 384 U.S. 436,
     86 S.Ct. 1602 (1966).. . . . . . . .  13, 25, 26, 29, 31, 32

Pennsylvania v. Muniz, 496 U.S. 582, 110 S.Ct. 2638 (1990). .  25

Rhode Island v. Innis, 446 U.S. 291,
     100 S.Ct. 1682 (1980). . . . . . . . . . . . . 25, 29, 32

Rita v. United States, 551 U.S. 338, 127 S.Ct. 2456 (2007). .  35

Tolliver v. Sheets, 594 F.3d 900 (6th Cir. 2010),
     (rehrg. and rehrg. en banc denied).. . . . . . . 26, 29, 30

United States v. Akridge, 346 F.3d 618 (6th Cir. 2003),
     cert. denied, 540 U.S. 1203 (2004).. . . . . . . . . . .  15

United States v. Booker, 543 U.S. 220 (2005). . . 14, 16, 35, 36

United States v. Borho, 485 F.3d 904 (6th Cir. 2007). . . . .  17

United States v. Bostic, 371 F.3d 865 (6th Cir. 2004).. . . .  15

United States v. Cole, 315 F.3d 633 (6th Cir. 2003). . . . . .   31

United States v. Conatser, 514 F.3d 508 (6th Cir. 2008). . . .   35

United States v. Copeland, 321 F.3d 582 (6th Cir. 2003).. . . .   15

United States v. Cotton, 535 U.S. 625 (2002). . . . . . . . .   16

United States v. Cromer, 389 F.3d 662 (6th Cir. 2004).. . . 15, 34

United States v. Crowell, 493 F.3d 744 (6th Cir. 2007). . . . .   37

United States v. Davis, 458 F.3d 491 (6th Cir. 2006). . . . .   16

United States v. Dyer, 580 F.3d 386 (6th Cir. 2009). . . . . .   19

United States v. Frazier, 423 F.3d 526 (6th Cir. 2005). . 18, 19

United States v. Frechette,
     583 F.3d 374 (6th Cir. 2009). . . . . . . . . . 20, 21, 24

United States v. Gates,
     461 F.3d 703 (6th Cir. 2006). . . . . . . . 14, 24, 35, 36

United States v. Goward, 315 Fed. App'x. 544,, 2009 WL 512685
     (6th Cir. 2009)(No. 06-2586)(unpublished). . . . . . . .   36

United States v. Gunter, 551 F.3d 472 (6th Cir. 2009). . . . .   19

United States v. Haynes,
     301 F.3d 669 (6th Cir. 2002). . . . . . . . . . 27, 31, 32

United States v. Helton, 314 F.3d 812 (6th Cir. 2003). . . . .   19

United States v. Jackson, 470 F.3d 299 (6th Cir. 2006). . . .   20

United States v. Jeross, 521 F.3d 562 (6th Cir. 2008).. . . .   15

United States v. Lattner, 385 F.3d 947 (6th Cir. 2004). . . .   18

United States v. McPhearson, 469 F.3d 518 (6th Cir. 2006). . .   15

United States v. Mendez, 498 F.3d 423 (6th Cir. 2007). . . . .   36

United States v. Miller, 314 F.3d 265 (6th Cir. 2002),
     cert. denied, 539 U.S. 908 (2003). . . . . . . . . . . .   18

United States v. Muniz, 1 F.3d 1018 (10th Cir. 1993). . . . .   26

United States v. Murphy, 241 F.3d 447 (6th Cir. 2001). . . . .   18

iii

United States v. Page, 232 F.3d 536 (6th Cir. 2000). . . . 16, 34

United States v. Perez, 484 F.3d 735 (5th Cir. 2007). . . . 22-24

United States v. Rommy, 506 F.3d 108 (2d Cir. 2007). . . . . . 29

United States v. Sims, 975 F.2d 1225 (6th Cir. 1992). . . . . 18

United States v. Smith, 182 F.3d 473 (6th Cir. 1999). . . . . 19

United States v. Weaver, 99 F.3d 1372 (6th Cir. 1996)). . . . 15

United States v. White, 551 F.3d 381 (6th Cir. 2008). . . . . 36

United States v. Woosley, 361 F.3d 924 (6th Cir. 2004). . . . 19


STATUTES

18 U.S.C. § 2251(a). . . . . . . . . . . . . . . . . 2, 6, 35

18 U.S.C. § 2251(e). . . . . . . . . . . . . . . . . . 6, 35

18 U.S.C. § 2252(a)(2). . . . . . . . . . . . . . . . . 6, 35

18 U.S.C. § 2252(b)(1). . . . . . . . . . . . . . . . . 6, 35

18 U.S.C. § 2252A. . . . . . . . . . . . . . . . . . . . 9

18 U.S.C. § 2252A(a)(2). . . . . . . . . . . . . . . . . 2, 4

18 U.S.C. § 2252A(a)(5)(B). . . . . . . . . . . . . 2, 4, 6, 35

18 U.S.C. § 2252A(b)(2). . . . . . . . . . . . . . . . . 6, 35

18 U.S.C. § 3231. . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 3553(a). . . . . . . . . . . . . . . . . 6, 7, 17

18 U.S.C. § 3742. . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . 1


U.S. SENTENCING GUIDELINES

§ 2B2.2(b)(2). . . . . . . . . . . . . . . . . . . . . . 4

§ 2B2.2(b)(3)(F). . . . . . . . . . . . . . . . . . . . . 4

§ 2B2.2(b)(4). . . . . . . . . . . . . . . . . . . . . . 5

§ 2B2.2(b)(5). . . . . . . . . . . . . . . . . . . . . . 5

§ 2G2.1(a). . . . . . . . . . . . . . . . . . . . . . . . 4

§ 2G2.1(b)(1). . . . . . . . . . . . . . . . . . . . . . 4

§ 2G2.1(b)(2)(A). . . . . . . . . . . . . . . . . . . . . 4

§ 2G2.1(b)(3). . . . . . . . . . . . . . . . . . . . . . 4

§ 2G2.1(b)(5). . . . . . . . . . . . . . . . . . . . . . 4

§ 2G2.2(b)(7)(D). . . . . . . . . . . . . . . . . . . . . 5

§ 4A1.1(d). . . . . . . . . . . . . . . . . . . . . . . . 5

§ 5G1.2(d). . . . . . . . . . . . . . . . . . . . . . . . 6

STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Fed. R. App. P. 34(a)(1), Appellee states that the facts and legal arguments are adequately presented in the briefs and record, and that oral argument is not necessary.


JURISDICTIONAL STATEMENT

Jurisdiction of the District Court was based upon 18 U.S.C. § 3231. Jurisdiction of the Court of Appeals is based upon 28 U.S.C. § 1291 and 18 U.S.C. § 3742.


STATEMENT OF THE ISSUES

1.    Whether the district court clearly erred in denying Lennard's motion to suppress the fruits of the search warrant of his residence.

2.    Whether the district court clearly erred in denying Lennard's motion to suppress his statements to law enforcement officers.

3.    Whether sentencing enhancements based on the district court's factual findings of matters which were neither submitted to a jury nor admitted by Lennard, violated his Sixth Amendment right to trial by jury because Lennard entered a conditional plea of nolo contendre (reserving the right of appellate review of his motions to suppress), rather than a plea of guilty.

STATEMENT OF THE CASE

On September 18, 2009, a Complaint was filed in the District Court in the Northern District of Ohio, Western Division, charging Shawn Michael Lennard [hereinafter "Lennard," "Defendant" or "Appellant"] with violating 18 U.S.C. § 2252A(a)(5)(B) relating to child pornography. (R.1 Complaint). A three-count indictment was filed on October 7, 2009, charging Lennard with one count of sexual exploitation of a minor to produce child pornography, in violation of 18 U.S.C. § 2251(a); one count of receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2); and one count of possession of a computer containing images of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). (R.1 Indictment).

Subsequently, a four-count superseding indictment was filed on January 6, 2010, charging Lennard with two counts of sexually exploiting a minor in the production of child pornography that was transported interstate by any means, including computer, in violation of 18 U.S.C. § 2251(a) (Counts 1 and 2); one count of receipt of child pornography which was transported in interstate commerce, in violation of 18 U.S.C. § 2252A(a)(2) (Count 3); and one count of possession of a computer containing images of child pornography which was transported in interstate commerce, in violation of 18 U.S.C. § 2252A(a)(5)(B) (Count 4). (R.18 Superseding Indictment). The court granted Lennard's Motion for Psychiatric Evaluation/Treatment with the Bureau of Prisons ["BOP"] to provide a copy of its report. (R.39 Order).

Lennard filed motions to suppress evidence, to suppress statements, to disclose confidential informants, and to exclude evidence on grounds of attorney-client privilege. (R.20, R.21, R.22, and R.23, respectively). The government filed responses in opposition. (R.34, R.35, R.33, and R.27, respectively). Regarding privileged information, the court agreed with the government's approach to withholding some disputed material as recommended by the memorandum, and allowing other information to be disclosed to the prosecuting attorney. (R.42 Order of 3/12/10). The court denied Lennard's other motions to suppress evidence, suppress statements, and to disclose confidential informants. (R.45 Minutes; R.72 Transcript of 5/26/10 Motion Hearing at TR 21-22, 66, and 9-11). The court further found Lennard was competent to stand trial. (R.72 Mot. Hrg. Transcript at TR 4).

On June 21, 2010, Lennard filed a Notice of Written Reservation of Appellate Rights upon Conditional Plea of Nolo Contendre, reserving the right to appeal the district court's order dismissing his motions to suppress evidence, suppress statements, and to disclose the identity of confidential informants. (R.48 Notice). That same day, he withdrew his not guilty plea and entered a plea of nolo contendre to all charges.[1]   (R.71 Transcript of 6/21/10

---

[1] The government objected to the nolo contendre plea based on long established DOJ policy because the defendant does not acknowledge guilt. Defendant's intent was to avoid making statements which may be used in a subsequent state court prosecution. (R.71 Change of Plea Transcript at TR 4-6). The district court found "a no contest plea is unique and is appropriate in this unique case," and accepted Lennard's plea. (Id. at TR 36).

Change of Plea Hearing at TR 33-34).

A presentence report ["PSR"] was prepared.  Counts 1 and 2, the production of child pornography, were not grouped because the acts were not "substantially the same harm."  (PSR ¶ 32).  However, Counts 3 and 4, receipt and possession of child pornography, were grouped because they involved substantially the same harm.  (PSR ¶ 33).  The base offense level for Count 1 was 32, pursuant to Guideline § 2G2.1(a); 4 levels were added because the victim was younger than 12 years old (§ 2G2.1(b)(1)); 2 levels were added because the offense involved distribution of the material (§ 2G2.1(b)(3)); and 2 levels were added because the minor victim was in Lennard's custody and care while the illegal activity took place (§ 2G2.1(b)(5)); all for an adjusted Offense Level for Count 1 of 40.  (PSR ¶¶ 34-42).  The calculation for Count 2 mirrored Count 1, but with one additional offense characteristic: 2 levels were added pursuant to § 2G2.1(b)(2)(A) because the offense involved sexual contact.  (PSR ¶ 45).  Thus the adjusted Offense Level for Count 2 was 42.  (PSR ¶ 52).

Counts 3 and 4, receipt/distribution and possession of child pornography, were grouped.  The base offense level for violations of 18 U.S.C. § 2252A(a)(5)(B) and § 2252A(a)(2) is 22, pursuant to Guideline § 2G2.2(a)(2).  (PSR ¶ 53).  Two levels were added because computer analysis confirmed prepubescent minors were depicted (§ 2B2.2(b)(2)).  (PSR ¶ 54).  In addition, the offense level was increased 2 levels because distribution was shown (§

4

2B2.2(b)(3)(F)); 4 levels because the material involved sadistic and/or masochistic and/or other depictions of violence (§ 2B2.2(b)(4)); and 2 levels for the use of a computer in the offense (§ 2B2.2(b)(5)). (PSR ¶¶ 55-57). Finally, 5 levels were added pursuant to § 2G2.2(b)(7)(D) because more than 600 images were involved, for an adjusted Offense Level of 37. (PSR ¶¶ 58-59). The PSR calculated the multiple-count adjustments as a Combined Adjusted Level of 45. (PSR ¶¶ 64-70). There was no reduction for acceptance of responsibility because Lennard pled nolo contendere rather than guilty. (PSR ¶ 71).

Lennard had one Criminal History Point for a Disorderly Person-Obscene Conduct conviction in the Monroe County (Michigan) District Court on August 28, 2009. Lennard pled guilty to the charge, reduced from Indecent Exposure, involving the 4-year old son of his previous girlfriend. The police were not able to get the child to discuss the incidents in detail, but he did relate that "Shawn does nasty things," "Shawn's pee-pee was furry," the defendant would make white milk come from his pee-pee and it tasted very nasty, and the sexual activity happened "all the time." (PSR ¶ 77). Lennard was sentenced to 93 days in jail (community service hours in lieu of jail). (Id., Monroe Cty. Case No. 09-02368-SM-J3). He was still serving a term of probation at the time of the instant offense. Accordingly, 2 additional criminal history points were added, pursuant to § 4A1.1(d). (PSR ¶ 78). Three criminal history points corresponded to a Criminal History Category II. (PSR ¶ 79).

5

Based on a Total Offense Level of 45 and a Criminal History Category II, the PSR recommended an advisory Sentencing Guideline range of life imprisonment. (PSR ¶ 157). However, because a life sentence was not statutorily allowable in any of the counts of conviction, Guideline § 5G1.2(d) provided for the statutory maximum term to be imposed in each count consecutively, to the degree necessary to achieve the guideline sentence. (PSR ¶ 158). The statutory sentence for Counts 1 and 2 was a mandatory minimum term of 15 years, up to 30 years, pursuant to 18 U.S.C. §§ 2251(a) and (e). (PSR ¶ 154). The statutory sentence for Count 3 was a mandatory minimum term of 5 years, up to 20 years, pursuant to §§ 2252(a)(2) and (b)(1). (PSR ¶ 155). The statutory sentence for Count 4 was a maximum term of 10 years, pursuant to §§ 2252A(a)(5)(B) and (b)(2). (PSR ¶ 156).

Sentencing was held on September 27, 2010. The court began by calculating the proper Guideline Sentencing range which, because of stacking and statutory maximums, was no more than 90 years. (R.73 Sentencing Transcript at TR 5-6). Defense counsel argued for an appropriate sentence to include psychiatric counseling. (Id. at TR 6-7). The court allowed the defendant to speak, then heard victim statements from the child's family. (Id. at TR 7-12). Next, the government argued for what it considered an appropriate sentence, citing various 18 U.S.C. § 3553(a) factors, and further requesting a lifetime period of supervised release. (Id. at TR 13-14).

The court noted the Guidelines were advisory, and applied the

6

§ 3553(a) factors such as the nature of the offense, the need to reflect the seriousness of the offense, adequate deterrence to this defendant and others in the community, and protection of the public. (Id. at TR 15-16). It found Lennard abused his position of trust in the worst possible way imaginable by exploiting his fiancée's son. (Id. at 16). Looking at his character and background, the court found especially troublesome Lennard's attitude following his 2009 Michigan criminal conviction for Disorderly Person/Obscene Conduct involving a 4-year old boy. It paraphrased Lennard's computer chat, "I just got out of a tight spot in the Courts. Thank God I know the right people or I would have been away for 30 years.... All of this because I loved a child. I did nothing bad or wrong. I hope that I never have to go through this again." (Id. at TR 17). The court noted Lennard's background indicated perhaps some drug and/or alcohol abuse. (Id. at TR 18). It also looked at his diagnosed psychiatric disorders, including depression, pedophilia, borderline personality disorder, and attempted suicide. (Id. at 18-19). However, it concluded that Lennard is "a very manipulative person," not just with young children but with other adults, "talk[ing] others into giving you money to help you when in reality the money was being used for something else...." (Id. at 18).

The court imposed a sentence of 360 months each on Counts 1 and 2, 240 months on Count 3, and 120 months on Count 4, all to run consecutively. (R.53 Judgment filed 10/5/2010; R.73 Sentencing

Transcript at TR 24).  "That is equivalent to 90 years in prison, and that is, in effect, a life sentence."  (Id. at TR 24).  It also imposed a life term of supervised release.  (Id.).  The court summarized why such a lengthy sentence was appropriate.

> The reason why a high sentence is appropriate in this case is because of the level of inducement and deceit that you undertook to carry out this sexual victimization; the fact that this offense in which you were engaged took place in part during weekly mental health counseling services and that you never disclosed your sexual attraction to children; the fact that in August of 2009 you received a very light sentence for alleged sexual activity with a minor and yet continued to engage in sexual activity with a new victim.
> You also bragged in the context of your computer chat about being able to get away and sexually abusing a child and receiving a light sentence for your actions.
> You were bold enough to tape record and videotape the sexual activity and attempt to share it with others without fear of retribution, and in all likelihood you adopted a male child with the intent of doing what you did in this case.... Instead of setting an example and helping guide a young person, you committed unspeakable acts, including, I would note for the record, involving animals in some of those incidents.

(Id. at TR 23-24).  The court wanted the record to also reflect that the reason it sentenced "at the high end is because of the impact on the young, innocent victim and victims," which included the family, of whom Lennard "violated an unspeakable trust."  (Id. at TR 25).

Lennard filed a timely appeal on October 7, 2010.  (R.54 Notice of Appeal).

STATEMENT OF THE FACTS

On September 17, 2009, FBI Special Agent ["S/A"] Steven A. Smith applied for and was issued a search and seizure warrant for 5555 Flanders Road, Toledo, Ohio, a location believed to conceal evidence of activities relating to material constituting or containing child pornography, in violation of 18 U.S.C. § 2252A. (Case No. 3:09MJ7086). S/A Smith provided a sworn 15-page affidavit reciting his law enforcement experience and detailing probable cause in support of the warrant. (R.1 App. for Search Warrant, Attach. 1, Affidavit, Case No. 3:09MJ7086). Information was provided by a cooperating witness ["CW"] assisting the Honolulu Division of the FBI. The CW, who had provided reliable information in the past, reported information regarding an individual using the Internet alias "boysdaddy" and ""boysdaddy1," later self-identified as Shawn, with whom he was in contact on an Internet website that is frequented by "boy lovers" (pedophiles interested in young males). The website allows individuals to post messages for others to read, and individuals can also initiate real-time online chats using MSN Messenger. (R.1 Search Warrant Aff. at ¶ 18, Case No. 3:09MJ7086). The CW reported that Shawn joined the website on August 20, 2009, and provided a statement regarding his interest in boys, and claiming to have a 7-year-old son and a 14-year-old son. He stated that he still plays with the little one on a regular basis. (Id. at ¶ 19; PSR ¶ 16).

Between September 2 and September 6, 2009, Shawn posted

9

statements that he had shot some videos for his private stash. He offered to share them or trade with the CW as long as no one else got them. Further, he inquired if the person he was corresponding with [the CW] could take naked pictures or videos for him, and Shawn would share all of his with [the CW]. (Id. at ¶ 20; PSR ¶ 16). Shawn posted the following statements to the website:

    a.    "I love that! What do you do with him? I have done so much shit.. I just shot some awesome videos on Sunday.. For my private stash.."

    b.    "I had my pointer finger up my sons ass on Sunday- All the way up.. For probally 15 - 20 minutes.. Getting ready to be able to fuck him.. He loves the finger up there."

    c.    "I can share on IM when we talk.. Just please do not pass on to anyone.. These pics are sort of safe.. Got some really fun ones we can trade later on as long as no one else get's them.."

    d.    "I am gonna go jack off to some of my video's in a bit"

    e.    "Also, can u take some cute naked pics or videos for me?? I will share all of mine with ya!!"

(R.1 Search Warrant Aff. at ¶ 20, Case No. 3:09MJ7086).

On September 4, 2009, Shawn posted the email address "boysdaddy1@gmail.com," said he also used that email address for MSN Messenger, and encouraged the CW to get on MSN. He (Shawn) got the webcam going and wanted to share with him. (Id. at ¶ 21; PSR ¶ 16). On or about September 4, Shawn chatted with another individual collaborating with the CW, during which he repeatedly attempted to transmit video via a Logitech webcam but experienced technical difficulty. Shawn indicated the video showed him and his stepson engaging in sexual activity. (Id. at ¶ 22; PSR ¶ 16).

On or about September 14 2009, Shawn further detailed his previous and ongoing abuse of the child, posting in an online chat session:

a. "well, I love when he sucks on my cock... All slimey and slippery.  His little boner is so fucking hot!"

b. "He loves when I stick shit in has ass too.. Like my pointer finger.. Head of my cock... A vibrator. I have a little purple vibrator that fits perfectly."

c. "Just started shooting him with cam 2 weekends ago"

d. "My fucking 14 yr old found a vid of 4 yr old getting fucked tonight!!!!!!!!"

(R.1 Search Warrant Aff. at ¶ 23, Case No. 3:09MJ7086).  He also stated that he sexually abused his 14-year-old son, and had discussed providing his children to others for financial compensation.  (Id. at ¶ 24; PSR ¶ 19).  During that chat session, Shawn attempted to send a file to the CW with the name "toddler girl - REAL Dad finding 2yr olds clitter with sound (Pthc,Pedo, Child Baby Fuck).avi."  (Id. at ¶ 25).

The records from the website indicate the posts made by Shawn between August 22, 2009 and September 13, 2009 originated from the IP address 72.241.164.132.  (Id. at ¶ 26).  On September 16, 2009, an administrative subpoena was served on Buckeye CableSystem, requesting subscriber information and IP connection data for the account utilizing the IP address 72.241.164.132 between August 22 and September 5, 2009.  Buckeye CableSystem responded that this IP was assigned to an account with service at 5555 Flanders Road, Toledo, Ohio.  (Id. at ¶ 27).  Surveillance was conducted in the

vicinity of 5555 Flanders Road.  It revealed that a vehicle parked in the driveway was registered to Shawn Michael Lennard.  (Id. at ¶ 28).

Based upon S/A Smith's sworn affidavit attesting to the above facts, Magistrate Judge Vernelis K. Armstrong found probable cause existed and issued the search and seizure warrant for 5555 Flanders Road, Toledo, Ohio on September 17, 2009.  (R.1 Search Warrant, Case No. 3:09MJ7086).

Over sixty items of evidence were seized including numerous computers, disks, and other computer equipment. Subsequent analysis revealed that the equipment stored numerous images of child pornography.  The analysis revealed that during the time period contained in count three of the superseding indictment, the defendant received child pornography over the internet. (PSR ¶ 20). Finally, the analysis revealed that the defendant had taken two videos showing he and what turned out to be a seven year old boy. During those videos, the defendant was observed to perform fellatio on the seven year old boy.  He was also observed to fondle the seven year old boy.  Additionally, Lennard instructed the seven year old boy to masturbate a dog.  (PSR ¶ 20).  These two videos lasted approximately six minutes and ten minutes, respectively. (PSR ¶¶ 20-25).

### SUMMARY OF ARGUMENT

The district court did not clearly err in denying Lennard's motions to suppress the evidence seized from a search warrant and Lennard's spontaneous statements made during the execution of that warrant.  First, the magistrate found probable cause existed to support the warrant because the Cooperating Witness who identified an internet poster called "Shawn" with whom he had chatted on a pedofile-oriented website had offered reliable information to the Hawaii FBI office in the past.  Moreover, there was independent corroboration by local FBI agents who traced the IP address for "Shawn" to an account with service at 5555 Flanders Road, Toledo, Ohio.  Surveillance conducted in the vicinity of 5555 Flanders Road revealed that a vehicle parked in the driveway was registered to Shawn Michael Lennard.

Second, the court did not err in ruling there was no coercive police activity compelling Lennard to make spontaneous statements to law enforcement during the execution of the search warrant.  Lennard's handcuffs were removed and he was given his _Miranda_ rights, invoking his right to counsel when the questioning turned to the topic of internet activity of a sexual nature.  Interrogation ceased and Lennard used his cell phone.  Law enforcement stayed ten feet away and did not engage Lennard in conversation as he sat on the pickup's tailgate outside the residence during the three-hour search.  With the exception of seeing to Lennard's physical comfort, the agents never questioned him.  They only responded to Lennard's volunteered statements, such as asking who

13

"they" were when he muttered, "They enjoyed it," to identify other unknown victims. Lennard was not under arrest at the time, and there was no authority to take him to jail during the search. In addition, the agents had secured the scene and under their watchful presence, there was little opportunity that Lennard could have acted on any suicidal thoughts. The court properly concluded Lennard's will was not overborne and therefore his statements were admissible.

Third, Lennard's claim that his Sixth Amendment right to trial by jury was violated is foreclosed by prior caselaw. Lennard complains that his recommended Sentencing Guideline was enhanced on the basis of judge-found facts neither found by a jury nor by his own admission, as a result of his no contest plea. However, "judicial fact-finding in sentencing proceedings using a preponderance of the evidence standard post-Booker does not violate either Fifth Amendment due process rights, or the Sixth Amendment right to trial by jury." United States v. Gates, 461 F.3d 703, 708 (6th Cir. 2006). Although the judge-found facts raised Lennard's recommended Guideline range, the court did not impose a sentence greater than the statutory maximum.

ARGUMENT

I.   STANDARDS OF REVIEW.

    A.   Motions to Suppress.

The standard of review on motions to suppress is to uphold the factual findings of the district court unless clearly erroneous, and to review legal conclusions de novo. United States v. McPhearson, 469 F.3d 518, 523 (6th Cir. 2006) (citing United States v. Weaver, 99 F.3d 1372, 1376 (6th Cir. 1996)). Where, as here, the district court has denied the defendant's motion to suppress, the Court reviews the evidence in a light most favorable to the government. United States v. Akridge, 346 F.3d 618, 622-23 (6th Cir. 2003), cert. denied, 540 U.S. 1203 (2004).

    B.   Constitutionality of the Sentence.

"This court reviews a constitutional challenge to a defendant's sentence de novo wherever the defendant preserves the claim for appellate review." United States v. Copeland, 321 F.3d 582, 601 (6th Cir. 2003). However, arguments raised for the first time on appeal are reviewed for plain error, "even if the forfeited assignment of error is a constitutional error." United States v. Cromer, 389 F.3d 662, 672 (6th Cir. 2004). When a defendant is given an opportunity to object to a sentence in the district court and does not clearly articulate any objection and the grounds upon which the objection is based, this Court reviews the objections raised on appeal under the plain-error standard. United States v. Jeross, 521 F.3d 562, 585 (6th Cir. 2008), citing United States v. Bostic, 371 F.3d 865, 872-73 (6th Cir. 2004).

Consequently, to prevail on his claim made for the first time on appeal, Lennard must show the existence of an "(1) 'error,' (2) that is 'plain,' and (3) that 'affect(s) substantial rights.'" United States v. Cotton, 535 U.S. 625, 631 (2002) (quoting Johnson v. United States, 520 U.S. 461, 466-67 (1997)). If Lennard meets these requirements, this Court "'may then exercise its discretion to notice a forfeited error, but only if the error seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings.'" Id. at 631-32 (quoting Johnson, 520 U.S. at 466-67). An error is prejudicial when it "results in [the] imposition of a sentence which is not authorized by law." United States v. Page, 232 F.3d 536, 544 (6th Cir. 2000).

Post-Booker, the proper standard of appellate review for criminal sentencing appeals is reasonableness. United States v. Booker, 543 U.S. 220, 260-62 (2005). The Court reviews the reasonableness of a sentence using the abuse-of-discretion standard of review. Gall v. United States, 552 U.S. 38, 51, 128 S.Ct. 586, 597 (2007). If the defendant's sentence is within the Sentencing Guidelines range, the Court may, but need not, apply a presumption of reasonableness. Id. (citation omitted).

The reasonableness review is two-fold, requiring that a sentence be both procedurally and substantively reasonable. United States v. Davis, 458 F.3d 491, 495 (6th Cir. 2006). A sentence may be procedurally unreasonable if the district court did not appreciate the non-mandatory nature of the guidelines, did not correctly calculate the sentencing range under the guidelines, or

16

did not consider the § 3553(a) factors. Id. (citations omitted). [A] sentence may be substantively unreasonable when the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors or gives an unreasonable amount of weight to any pertinent factor. United States v. Borho, 485 F.3d 904, 908 (6th Cir. 2007) (citation and quotation marks omitted).

II. THE DISTRICT COURT PROPERLY DENIED LENNARD'S MOTION TO SUPPRESS THE SEARCH WARRANT.

In his first assignment of error, Lennard argues that the district court erred by denying his motion to suppress evidence. Lennard alleged that the affidavit in support of the search warrant lacked probable cause because: (1) the reliability and honesty of the cooperating witness ["CW"] was unknown; (2) the affidavit did not provide the magistrate judge with a substantial basis for an independent determination that probable cause existed because it contained only conclusory hearsay from an unnamed source; and (3) there was no reported effort by law enforcement to independently corroborate the CW's information. (Appellant's Br. at 7).

When examining an affidavit to determine whether probable cause exists to issue a search warrant, the issuing Magistrate should ascertain whether "... there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 238, 103 S. Ct. 2332 (1983). This examination, commonly known as the "totality of the circum-stances test," requires the court to examine the facts set forth in

17

the affidavit in a common sense, non-technical fashion. <u>United States v. Frazier</u>, 423 F.3d 526, 531 (6th Cir. 2005) (<u>quoting</u> <u>Gates</u>, 462 U.S. at 231). "Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion, and is said to exist when there is a fair probability, given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." <u>United States v. Lattner</u>, 385 F.3d 947, 951-52 (6th Cir. 2004) (internal citations and quotations omitted). The test for probable cause is simply whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place." <u>Illinois v. Gates</u>, 462 U.S. at 238, 103 S.Ct. at 2332 (1983); <u>United States v. Murphy</u>, 241 F.3d 447, 457 (6th Cir. 2001). Determinations of probable cause are based on a review of the "totality-of-the-circumstances," and involve a practical, common sense review of the facts available to the officer at the time of the search. <u>Illinois v. Gates</u>, 462 U.S. at 230, 103 S.Ct. at 2328; <u>United States v. Sims</u>, 975 F.2d 1225, 1238 (6th Cir. 1992). "An issuing judge's findings of probable cause should be given great deference by the reviewing court and should not be reversed unless arbitrarily exercised." <u>United States v. Miller</u>, 314 F.3d 265, 268 (6th Cir. 2002), <u>cert. denied</u>, 539 U.S. 908 (2003) (citations omitted). As long as the issuing judge had a "substantial basis" for determining that a search would uncover evidence of wrongdoing, the warrant must be upheld. <u>Id.</u> Accordingly, the issue was

18

whether the "totality of the circumstances" supported the magistrate's determination there was a substantial basis to find probable cause that a search of 5555 Flanders Road would uncover evidence of wrongdoing.

It is well established that a magistrate may rely on hearsay contained in the affidavit when determining whether to issue a search warrant. United States v. Dyer, 580 F.3d 386, 390 (6th Cir. 2009), citing United States v. Gunter, 551 F.3d 472, 479 (6th Cir. 2009). However, when the majority of the information in the affidavit comes from confidential sources, courts "must consider the veracity, reliability, and the basis of knowledge for that information as part of the totality of circumstances." Dyer, id., citing United States v. Helton, 314 F.3d 812, 819 (6th Cir. 2003). This Court stated in United States v. Frazier, 423 F.3d 526 (6th Cir. 2005), "[w]hile independent corroboration of a confidential informant's story is not a *sine qua non* to a finding of probable cause, in the absence of any indicia of the informants' reliability, courts insist that the affidavit contain substantial independent police corroboration." Id. at 532, citing United States v. Woosley, 361 F.3d 924, 927 (6th Cir. 2004). However, the court also noted, "[i]f the prior track record of an informant adequately substantiates his credibility, other indicia of reliability are not necessarily required." United States v. Smith, 182 F.3d 473, 483 (6th Cir. 1999). Lennard's case falls between the two.

In this case, the Cooperating Witness who provided information on the individual identifying himself as "Shawn" on the internet, gave this information to the Honolulu Division of the FBI. The Honolulu FBI informed the Toledo FBI that this CW had provided reliable information in the past, and continues to provide information on an ongoing basis. (R.1 Complaint, Affidavit in Support at ¶ 3). FBI S/A Smith's affidavit contained no additional information about the CW's previous tips, the length or nature of the relationship between the CW and the Honolulu FBI, and any indication that the magistrate judge learned of the CW's identity. Therefore the court looked to other indicia of reliability, for example, whether the magistrate's finding of probable cause was also based on the affiant's personal knowledge and observations, rather than hearsay of the informant. See <u>United States v. Jackson</u>, 470 F.3d 299, 308 (6th Cir. 2006).

In <u>United States v. Frechette</u>, 583 F.3d 374 (6th Cir. 2009), the warrant was valid because the affidavit provided the magistrate judge with a substantial basis for finding probable cause when: (1) the defendant paid $79.95 to access a commercial child pornography site using an email address; (2) the agent determined that Comcast owned the IP address used to access the web site, and that the person who used that IP address had an email address and a PayPal account connected to the defendant's residence; (3) the defendant had a previous criminal history and was listed in the Michigan State Sex Offender Registry at the same address; (4) at the time of

the affidavit, the probation office, the postal service, and the department of motor vehicles listed the defendant at that address as well; and (5) based on years of experience handling child pornography cases, the agent stated in his affidavit that consumers of child pornography usually maintain illegal images using their computers, and evidence can remain on the computers even after the viewer deletes the images.  Id. at 377, 379-80.  Considering all these facts, the Sixth Circuit held, "there clearly was a 'substantial basis' for the magistrate judge to conclude that there was a fair probability that evidence regarding illegal images of child pornography could be found on a computer located at [defendant's residence]."  Id. at 380.

Like Frechette, Lennard had an email address and IP address connected to 5555 Flanders Road.  At the time of the affidavit, surveillance of that location revealed a vehicle registered to a Shawn Michael Lennard.  In his motion to suppress, the defendant challenged the probable cause finding because the affidavit did not reveal that Lennard's license plates were registered to a Michigan address, not the 5555 Flanders Road address.  This argument did not defeat the magistrate's probable cause finding because pornographic images transmitted over the internet are not limited to a suspect's official listed residence, but may be transmitted to or from other addresses such as a place of employment, an internet café, or a location where he maintains a computer--in Lennard's case, his fiancée's home.

Similarly, in <u>United States v. Perez</u>, 484 F.3d 735 (5th Cir. 2007), the appellate court held that there was a substantial basis to conclude that evidence of criminal activity would be found at 7608 Scenic Brook Drive, Austin, Texas. The affidavit presented to the magistrate included the information that the child pornography viewed by the complainant/witness in New York had been transmitted over the IP address 24.27.21.6, and that this IP address was assigned to Javier Perez, residing at 7608 Scenic Brook Drive, Austin, Texas. Perez argued that the association of an IP address with a physical address does not give rise to probable cause to search that address. The court held, "though it was possible that the transmissions originated outside of the residence to which the IP address was assigned, it remained likely that the source of the transmissions was *inside* that residence." <u>Id.</u> at 740 (emphasis added). This "fair probability" was bolstered by the New York witness's statement that the internet images she observed appeared to be videos played on a television screen, transmitted via a webcam. There was therefore a basis to believe that the suspect would have such videos in his residence. <u>Id.</u> at 741. The investigating agent stated in his affidavit that, in his experience, persons interested in child pornography typically retain numerous images of child pornography as well as "material documenting the arrangements, the introduction, and tasks to consummate the acquisition of child pornography." The <u>Perez</u> court ruled, "Based on this information, there was probable cause to

believe that physical evidence of violations of the child pornography laws would be located at 7608 Scenic Brook Drive." Id. Although the analysis was complicated by the fact that 7608 Scenic Brook Drive had more than one occupancy unit, the court held:

> Because the IP address in question was registered in Perez's name, and because the two other individuals living in Perez's house maintained separate residences, there was still a fair probability that Perez was the party responsible for the illegal transmissions. This court has held that the requisite "fair probability" is something more than a bare suspicion, but need not reach the fifty percent mark.

Perez, 484 F.3d at 744 (internal citation omitted).

Applying Perez to the instant case, the Perez witness complaining of child pornography supplied an internet moniker which lead to a specific IP address, which in turn was associated to a physical address, as is the case with Lennard. The Perez witness stated she observed videos which appeared to play on a television, which was broadcast via a web camera. In Lennard's case, there was no witness complaint that Shawn had posted actual child porno-graphic images on the internet. However, when communicating with the CW, Shawn alluded to shooting videos for his private stash, masturbating to videos, offering to share all of his naked pictures and videos, and that he just got the webcam going and wanted to share. When internet chatting with another individual collabor-ating with the CW, Shawn repeatedly tried to transmit video via a webcam but experienced technical difficulty, and wrote that he was watching the video "right now" during the chat session. (R.1 Complaint, Affidavit in Support at ¶¶ 7-8).

23

Following the holdings in <u>Frechette</u>, <u>Perez</u>, and <u>Gates</u>,[2] and based on S/A Smith's affidavit swearing to similar information, as well as the CW's information, Magistrate Judge Armstrong found probable cause to believe, when considering the totality of the circumstances, that physical evidence of child pornography would be located at 5555 Flanders Road, Toledo.  The district court agreed, finding that <u>Frechette</u> and <u>Perez</u> were similar to Lennard's case, the reasoning in those cases was persuasive, and upon review of the affidavits and the supporting documentation, it held they were sufficient to uphold the search warrants.  (R.72 Transcript of Motion Hrg. at TR 22).  The court stated:

> The magistrate's decision was not arbitrarily made. The FBI corroborated the story of the confidential witness by confirming that a person named Shawn lived at the home connected to the IP address associated with the internet alias with which the confidential witness communicated.  When considering the totality of the circumstances, I find there was a substantial basis for the magistrate to conclude there was a fair probability physical evidence of violations of the child pornography laws would be located at this home.  And therefore, the three arguments presented by defendant are not well taken under this motion.

(R.72 Transcript of Motion Hrg. at TR 21-22).

The district court did not plainly err when it denied Lennard's motion to suppress the evidence of the search warrant. For these reasons, Lennard's first assignment of error should be denied.

---

[2] <u>United States v. Gates</u>, <u>supra</u>, 461 F.3d 703 (6th Cir. 2006); not <u>Illinois v. Gates</u>, <u>supra</u>, 462 U.S. 238 (1983).

## III. THE DISTRICT COURT PROPERLY DENIED LENNARD'S MOTION TO SUPPRESS HIS STATEMENTS TO LAW ENFORCEMENT OFFICERS.

In his second assignment of error, Lennard contends the district court erred to his prejudice by denying his motion to suppress oral statements he made to law enforcement officers. Lennard complains that he was detained for several hours outside the scene of the search warrant execution in an attempt to have him "blurt out" incriminating statements. (Appellant's Br. at 11). He claims that keeping him at the scene rather than transporting him to a jail or hospital is ample evidence of coercive police activity, and therefore his subsequent statements were improperly gained.

Warnings are required when a suspect is subject to "custodial interrogation." Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602 (1966). Interrogation is any "express questioning or its functional equivalent."  This includes any words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response from a suspect. Rhode Island v. Innis, 446 U.S. 291, 100 S.Ct. 1682 (1980).  "Routine booking questions," or questions posed to secure the personal history data necessary to complete the booking process, are exempt from Miranda's coverage. Pennsylvania v. Muniz, 496 U.S. 582, 601-02, 110 S.Ct. 2638 (1990). In addition, "Volunteered statements of any kind are not barred by the Fifth Amendment."  Miranda, 384 U.S. at 478, 86 S.Ct. 1602 (1966).  Spontaneous statements volunteered by the defendant are admissible. They are not considered the product of "interrogation." Innis, 446 U.S. at 299-30; Estelle v. Smith, 451 U.S. 454, 101

25

S.Ct. 1866 (1981). "If a person voluntarily speaks without inter-rogation by an officer, the Fifth Amendment's protection is not at issue, and the statements are admissible." United States v. Muniz, 1 F.3d 1018, 1022 (10th Cir. 1993).

In Edwards v. Arizona, 451 U.S. 477, 484-85, 101 S.Ct. 1880 (1981), the Supreme Court established a brightline rule that once a suspect is in custody and invokes the right to counsel, law enforcement may not further interrogate him until counsel has been made available, or unless the suspect initiates further conver-sations or exchanges with the police.  If at any time during an interview a suspect requests counsel, "he is not subject to further questioning until a lawyer has been made available or the suspect himself reinitiates conversation." Davis v. United States, 512 U.S. 452, 458, 114 S.Ct. 2350 (1994) (citing Edwards, 451 U.S. at 484-85, 101 S.Ct. 1880).  However, a suspect may waive his Fifth Amendment right to counsel and the Edwards protections after counsel has been requested, but only if the suspect himself has initiated the conversation or discussions with the authorities. Abela v. Martin, 380 F.3d 915, 927 (6th Cir. 2004), citing Minnick v. Mississippi, 498 U.S. 146, 155-56, 111 S.Ct. 486 (1990).  Even if a suspect has invoked his right to remain silent, any information he then volunteers is admissible, provided it did not result from further interrogation. Tolliver v. Sheets, 594 F.3d 900, 919 (6th Cir. 2010), citing Miranda, 384 U.S. at 478, 86 S.Ct. 1602 ("Any statement given freely and voluntarily without any

26

compelling influences is, of course, admissible in evidence.").

In his appeal, Lennard complains that his continued presence outside the scene of the search warrant execution was coercive police activity calculated to elicit incriminating statements. An incriminating statement is deemed to have been coerced "when the conduct of the law enforcement officials is such as to overbear the accused's will to resist." United States v. Haynes, 301 F.3d 669, 684 (6th Cir. 2002) (quoting Ledbetter v. Edwards, 35 F.3d 1062, 1067 (6th Cir. 1994)).

The district court conducted a motion hearing where the government presented testimony from two FBI agents, S/A Adam Maddock and S/A John Wagner, to whom the statements were made. Lennard did not testify. (R.72 Transcript of 5/26/10 Mot. Hrg.). S/A Maddock testified that when he arrived at the location where Lennard was being held, he and another agent advised Lennard of his Constitutional rights and removed his handcuffs. (Id. at TR 27). They asked Lennard some general background questions, including questions about computers in the house. Lennard appeared sober and cognizant of his surroundings, and responsive to questions. (Id. at TR 28, 41; Wagner at TR 54). When the agents advised Lennard they would like to question him about internet activity of a sexual nature, Lennard invoked his right to counsel. The agents ceased questioning at that point. (Id. at TR 28, 33, 37, 41-42; Wagner at TR 52, 57). Lennard was given some privacy to call an attorney, using his own cell phone. (Id. at TR 28, 33, 37).

27

In the following two to three-hour period, the agents remained outside a short distance away talking with each other, while keeping Lennard company as he sat on the tailgate of the truck. (Id. at TR 40). Their distance from Lennard ranged from 10-20 feet away, moving next to him to respond to his statements, but usually somewhere in the middle. (Id. at TR 42-43). During this time Lennard made spontaneous, unprovoked statements. (Id. at TR 29, 52-53). S/A Maddock testified, "We were not directly engaging him other than when he engaged us." (Id. at TR 40). S/A Wagner testified that neither he nor anyone in his presence coerced or interrogated Lennard in reference to the investigation during that time. (Id. at TR 52, 54). However, they did ask questions relating to his comfort, such as if he wanted something to eat or drink, or to use the restroom. (Id. at TR 52, 58).

The agents testified as to the nature of Lennard's statements. Lennard asked which jail he would be going to, expressing a preference. The agents stated they weren't certain whether he would be going to jail at that point because they were still waiting on information whether he would be arrested. (R.72 Transcript of Mot. Hrg. at TR 29). Lennard stated he was definitely going to jail because his face was in the video. (Id. at TR 30). He also said "I'm fucked. My father won't be paying my attorney's fees anymore." (Id.). S/A Maddock testified that these statements were not in response to any kind of questioning. (Id.).

In regard to the victim, Lennard stated at one point that

28

"they liked it." The agents asked to whom he was referring, and Lennard indicated his fiancée's son. (Id. at TR 31). S/A Maddock testified that he wasn't specifically thinking about whether they could use that information for incrimination, but "more to identify potential victims that we might not have identified up to that point to get those victims the help that they would need." (Id. at TR 43). In Tolliver v. Sheets, 594 F.3d 900, 919 (6th Cir. 2010) (rehrg. and rehrg. en banc denied), the defendant claimed that, by declaring that he needed to know whether there was "more than one gun in the place," the detective was attempting to elicit information and so engage in the "functional equivalent" of express questioning within the meaning of Innis. This Court stated:

> The line between impermissible interrogation and permissible follow-up questions to volunteered statements is a fine one. Police may listen to volunteered statements, and need not interrupt a suspect who is volunteering information in order to deliver a Miranda warning. See Miranda, 384 U.S. at 478, 86 S.Ct. 1602. Police may even interrupt a volunteered statement to ask clarifying or follow-up questions. See, e.g., U.S. v. Rommy, 506 F.3d 108, 132-33 (2d Cir. 2007) (collecting cases); Andersen v. Thieret, 903 F.2d 526, 532 (7th Cir. 1990) (rejecting custodial interrogation challenge when, in response to suspect's volunteered statement, "I stabbed her," police asked, "Who?").

Tolliver, 594 F.3d at 920 (emphasis added). The Court rejected Tolliver's challenge, explaining that the difference between permissible follow-up questions and impermissible interrogation clearly turns on whether the police are seeking clarification of something that the suspect has just said, or whether instead the police are seeking to expand the interview. Id. at 921.

Here, in response to Lennard's volunteered statement that "they enjoyed it," the FBI agents sought to clarify who "they" were to identify as yet unknown victims, rather than to elicit incriminating statements through impermissible interrogation.  Applying the holding in <u>Tolliver</u> and reviewing the evidence in a light most favorable to the government, the district court did not clearly err by denying Lennard's motion to suppress his statement.

The other occasion in which the agents responded to Lennard was when he proffered the statement that "he was the worst kind of person there is." (R.72 Transcript of Mot. Hrg. at TR 31).  The agents tried to console Lennard by responding rhetorically, "You haven't killed anybody, have you?"  <u>Id.</u> at TR 36).  After stating "he was a pedofile and do you know what happens to a pedophile in jail," Lennard made two troubling statements.  (<u>Id.</u> at TR 53).  He told Detective Hunt that he was thinking of trying to get to one of their weapons so that he could shoot himself in the head.  (<u>Id.</u>).  When Det. Hunt asked Lennard to repeat that to S/A Wagner, Lennard said if he had been at his residence and had the opportunity to get his gun from the safe, he would have killed himself.  (<u>Id.</u> at TR 54).  The agents said they did not treat Lennard any differently after those statements, but increased their guard on him. (<u>Id.</u>). S/A Wagner explained to the court that they were briefed prior to arriving on the scene that there was the potential that Lennard had a weapon and that he had made suicidal comments in some internet conversations; therefore they kept "both eyes" on him.  (<u>Id.</u> at TR 60).

The district court rejected the defendant's position that "rather than spiriting him off to a lockup somewhere, they sat him for two and a half to three hours in the back of a pickup truck and waited to see if he would make any comments. ... interrogation by invitation." (Id. at TR 62-63). The court ruled that Lennard was in custody, that interrogation began and that the defendant invoked his right to counsel, that questioning by the officers ceased. Citing United States v. Cole, 315 F.3d 633 (6th Cir. 2003), it further ruled that Lennard's volunteered statements were not barred by the Fifth Amendment, and their admissibility was not affected by Miranda. (Id. at TR 65). It found that the remark, trying to determine who "they" were was a legitimate question in an attempt to find out if another victim was involved. (Id. at TR 66). The district court did not commit plain error when it ruled that there was nothing in the totality of the circumstances to support a finding that the officers either directly or indirectly encouraged or invited Lennard to offer information about the case. (Id.).

Lennard fails to the meet the three-prong test from McCall v. Dutton, 863 F.2d 454, 459 (6th Cir. 1988), to determine whether a confession was coerced: (1) the police activity was objectively coercive; (2) the coercion in question was sufficient to overbear defendant's will; and (3) defendant's will was, in fact, overborne as a result of the coercive police activity. (Citations omitted). An incriminating statement is deemed to have been coerced "when the conduct of the law enforcement officials is such as to overbear the accused's will to resist." United States v. Haynes, 301 F.3d 669,

31

684 (6th Cir. 2002) (quoting <u>Ledbetter v. Edwards</u>, 35 F.3d 1062, 1067 (6th Cir. 1994)).  Here there was no coercive police conduct. Applying the <u>Innis</u> standard, Lennard's statements were not made in response to any questioning whatsoever.

In considering whether a defendant's will has been overborne in a particular case, relevant factors "include the age, education, and intelligence of the accused; whether the accused has been informed of his constitutional rights; the length of the questioning; the repeated and prolonged nature of the questioning; and the use of physical punishment, such as the deprivation of food or sleep." <u>Haynes</u>, 301 F.3d at 684 (quoting <u>Ledbetter</u>, 35 F.3d at 1067).  Lennard was 29 years old at the time (PSR at 2); he had some college education (PSR ¶¶ 140-143); and he had been informed of his <u>Miranda</u> rights (R.72 Transcript of Mot. Hrg. at TR 27). Lennard was not subject to repeated or prolonged questioning because it ceased when he invoked his right to counsel, which was approximately a half hour after he was originally stopped. (<u>Id.</u> at TR 28, 33, 37, 41-42, 52, 57-58).  Lennard was not deprived of food or sleep, and was allowed to use the restroom. (<u>Id.</u> at TR 52, 58). Moreover, the agents testified that Lennard appeared to be sober, cognizant of his surroundings, and understand the gravity of the situation. (<u>Id.</u> at TR 28, 54).

On appeal, Lennard contends he was kept outside his residence presumably so he could view the evidence being carried out and feel compelled to make incriminating statements.  He believes this was coercive police conduct because there were enough law enforcement

officers at the scene that some were available to transport him to jail or to a hospital. However, Lennard overlooks the fact that the officers were there to execute a *search* warrant, not an *arrest* warrant. Lennard was not under arrest, although he was detained outside for the duration of the search. Not until the search was conducted and evidence of child pornography was found on the seized computers did probable cause exist to support an arrest. It would have been premature to transport Lennard to jail before the completion of the search.

With respect to Lennard's suicidal statements, the agents had secured Lennard *outside* the house -- and away from the safe where he kept his gun. In addition, the watchful agents generally stood some distance away from where Lennard sat on the truck's tailgate. This distance, and because they had been previously briefed on his suicidal comments, coupled with their increased vigilance following his comment about grabbing one of their guns, made it highly unlikely that Lennard could successfully obtain a weapon or attempt to harm himself during those two to three hours. Accordingly there was no compelling need to take Lennard to a hospital or other secured facility, because he was not in immediate danger.

For all of the foregoing reasons, this Court should deny Lennard's second claim that he was subject to coercive police action, and affirm the district court's decision to deny his motion to suppress his statements. He has not shown plain error, that affected his substantial rights, or that his volunteered statements had an impact resulting in a sentence not authorized by law.

33

IV.  APPLICATION OF SENTENCING ENHANCEMENTS DID NOT VIOLATE
     LENNARD'S SIXTH AMENDMENT RIGHT TO TRIAL BY JURY.

In his last assignment of error, Lennard contends his sentence violates the Sixth Amendment because the district court applied enhancements which were neither admitted by him, nor presented to a jury for a factual determination.  (Appellant's Br. at 15).  He then lists the sentencing enhancements to his base offense level contained in the presentence report.  Lennard states that he did not acknowledge any of the facts supporting the enhancements by virtue of his "no contest" plea.  He complains that without these judge-found findings of fact, his advisory sentencing guideline range was 135-168 months; with the judge-found facts, the advisory guideline range was life.  (Id. at 16).  Lennard acknowledges that because three of the counts contained mandatory minimum sentences, his sentence would be the total (35 years), assuming the imposition of consecutive sentences.  (Id.).  He suggests that the issue of "whether judge-found facts--particularly where they are as contested as those presented here" may elevate the sentence years beyond that which would be reasonable, absent those judge-found facts. (Id. at 18).

This argument fails for three reasons.  First, Lennard did not contest these facts, either in objections to his PSR or at his sentencing hearing.  Arguments raised for the first time on appeal are reviewed for plain error, "even if the forfeited assignment of error is a constitutional error."  Cromer, 389 F.3d at 672.  An error is prejudicial when it "results in [the] imposition of a sentence which is not authorized by law."  Page, 232 F.3d at 544.

34

Lennard's sentence did not exceed the sentence authorized by law. The statutory maximum sentence for Counts 1 and 2 is a sentence up to 30 years, pursuant to 18 U.S.C. §§ 2251(a) and (e). The statutory maximum for Count 3 is 20 years, pursuant to §§ 2252(a)(2) and (b)(1). The statutory maximum sentence for Count 4 is 10 years, pursuant to §§ 2252A(a)(5)(B) and (b)(2). Therefore, the 90-year sentence imposed by the district court did not exceed the statutory maximum authorized by law, even when imposed consecutively. Thus Lennard fails to show plain error.

Second, the Supreme Court has held, "This Court's Sixth Amendment cases do not automatically forbid a sentencing court to take account of factual matters *not determined by a jury* and to increase the sentence in consequence. Nor do they prohibit the sentencing judge from taking account of the Sentencing Commission's factual findings or recommended sentences." Rita v. United States, 551 U.S. 338, 352, 127 S.Ct. 2456, 2465-66 (2007) (emphasis added). Accordingly, the district court was allowed to make findings regarding the facts supporting the sentencing enhancements.

The Sixth Circuit rejected this exact proposition in United States v. Gates, 461 F.3d 703, 708 (6th Cir.), cert. denied, 549 U.S. 1041, 127 S.Ct. 602 (2006) ("[W]e find that judicial fact-finding in sentencing proceedings using a preponderance of the evidence standard post-Booker does not violate either Fifth Amendment due process rights, *or the Sixth Amendment right to trial by jury.*")(emphasis added). See United States v. Conatser, 514

F.3d 508, 528 (6th Cir. 2008)(quoting <u>Gates</u>).  <u>See also</u>, <u>United States v. White</u>, 551 F.3d 381, 384 (6th Cir. 2008) (<u>en banc</u>) ("So long as the defendant receives a sentence at or below the statutory ceiling set by the jury's verdict, the district court does not abridge the defendant's right to a jury trial by looking to other facts, including acquitted conduct, when selecting a sentence within that statutory range."); <u>United States v. Mendez</u>, 498 F.3d 423, 427 (6th Cir. 2007) ("a post-<u>Booker</u> sentencing court may consider even 'acquitted conduct' if it finds facts supporting that conduct by a preponderance of the evidence"); <u>United States v. Goward</u>, 315 Fed. App'x. 544, 551, n.3, 2009 WL 512685 (6th Cir. 2009)(No. 06-2586) (unpublished) ("[T]he instant matter is distinguishable from <u>White</u> and <u>Mendez</u> on this issue because those cases dealt with "acquitted conduct," whereas here, Goward's sentence was enhanced based on conduct that was never presented to the jury.... Nevertheless, in light of this Circuit's clear holding permitting judicial fact-finding at sentencing under the preponderance of the evidence standard, we cannot find the district court committed clear error.").  Lennard's argument is thus squarely foreclosed by <u>Gates</u> and its progeny.

Third, the judge-found facts to which Lennard objects increased the recommended Guideline range to a life term.  Post-<u>Booker</u>, a Sentencing Guideline range is advisory; a court may depart or vary from that Guideline range when imposing a sentence.  However, a Guideline range is distinguishable from a *statutory*

36

maximum; a court may not impose a sentence greater than a statutory maximum.   Certainly, a fact that increases a sentence beyond the *statutory* maximum must be determined by a jury beyond a reasonable doubt.   Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348 (2000); United States v. Crowell, 493 F.3d 744, 749 (6th Cir. 2007). Here Lennard's sentence was not beyond the statutory maximum as a result of the judge-found facts, even if those facts increased his recommended Guideline range.   Sixth Circuit caselaw unambiguously permits the court to make sentencing-related findings of fact by a preponderance of the evidence.   For these reasons, Lennard's third assignment of error must fail.

<u>CONCLUSION</u>

For the foregoing reasons, this Court should affirm the district court's sentence and deny Shawn Lennard's appeal.

Respectfully submitted,

STEVEN M. DETTELBACH
UNITED STATES ATTORNEY


By: <u>Thomas O. Secor</u>
Thomas O. Secor
Assistant United States Attorney
Four Seagate, Suite 308
Toledo, Ohio 43604-2624
Telephone: (419) 259-6376
Fax: (419) 259-6360
Email: Thomas.Secor@usdoj.gov

CERTIFICATE OF COMPLIANCE

It is hereby certified that the foregoing Appellee Brief contains __958__ lines of monospaced typeface in compliance with Fed. R. App. P. 32(a)(7)(B).

Thomas O. Secor
Thomas O. Secor
Assistant United States Attorney

CERTIFICATE OF SERVICE

I hereby certify that the foregoing Plaintiff-Appellee brief was filed electronically on this __6th__ day of June, 2011, with the Sixth Circuit Court of Appeals.  Service upon counsel of record will be made through the Court's electronic filing system.

Spiros P. Cocoves
610 Adams St., 2nd Floor
Toledo, OH 43604-1423
  Attorney for Shawn Lennard

Thomas O. Secor
Thomas O. Secor
Assistant United States Attorney

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

Pursuant to Sixth Circuit Rule 30(b), the following filings from the district court's records are designated as relevant to this appeal:

| RECORD ENTRY NO. | DESCRIPTION OF ENTRY |
|---|---|
| n/a | **Docket for Case No. 3:09-MJ-7086** |
| 1 | Applic. for Search Warrant, Affidavit (Attach. #1) |
| n/a | **Docket for Case No. 3:09-CR-444** |
| 1 | Indictment |
| 18 | Superseding Indictment |
| 20 | Motion to Suppress Evidence |
| 21 | Motion to Suppress Statements |
| 22 | Motion to Disclose Confidential Informants |
| 23 | Motion to Exclude Evidence on Grounds of Privilege |
| 27 | Response to Mot. to Exclude Evidence RE: Privilege |
| 33 | Response to Mot. to Suppress Statements |
| 34 | Response to Mot. to Suppress Evidence |
| 35 | Response to Mot. To Disclose Confidential Informants |
| 42 | Order to Exclude Evidence RE: Privilege |
| 48 | Notice Reserve Appellate Rights, Plea Nolo Contendre |
| 53 | Judgment |
| 54 | Notice of Appeal |
| 71 | Transcript of Change of Plea Hearing held 6/21/10 |
| 72 | Transcript of Motion Hearing held 5/26/10 |
| 73 | Transcript of Sentencing Hearing held 9/27/10 |
| n/a | Presentence Report |

| RECORD ENTRY NO. | DESCRIPTION OF PROCEEDING OR TESTIMONY | TRANSCRIPT PAGES |
|---|---|---|
| 71 | Transcript of Change of Plea Hrg. | 4-6, 33-34, 36 |
| 72 | Transcript of Motion Hrg. | all |
| 73 | Transcript of Sentencing Hrg. | 5-19, 23-25 |